Good morning, Your Honor, and may it please the Court, James Chavez of Federal Defenders of San Diego, on behalf of the Defendant Appellant, Mr. Valenzuela-Quintero. Today we're asking the Court to vacate his sentence and remand for a new sentencing hearing for two reasons, the first of which I'd like to spend most of my time on today, which is that the district judge committed a procedural sentencing error when he failed to recognize his Kimbrough authority in this case. What about the argument that the judge simply was saying that he could not downwardly depart for a reason authorized by the guidelines, and that he did consider the argument in terms of a variance, but isn't it clear from his initial remarks that he was considering that the argument was made to him that this was an appropriate downward departure on a ground authorized by the guidelines, and he said, for example, the sentencing protocol is, as you know, in the first instance I am required to calculate correctly the guidelines level, and then he went on to say I can't just go down 12 levels in that calculation. The Court does say that. That's in the excerpt from records on page 10, but right above it, I mean, what the Court says is you have urged me to analogize to the crack cocaine cases and impose an enhancement of less than 12 levels. I understand the argument. I don't believe I have the authority to do that. And then again later he says I find it would be an incorrect application of the guidelines to ignore that and to rely on the spheres of the crack cocaine cases to impose an enhancement in calculating the guidelines of less than 12 levels. Yes, in calculating the guidelines. I mean, isn't that correct? That would not be appropriate simply to cast this in the form of a downward departure. What counsel was asking for was for a variance under Kimbrough, right? Booker says that the guidelines are advisory, and what Kimbrough tells us is that the district judges have the authority to vary from the guidelines based on policy reasons, even when the circumstances of the individual don't merit any particular variance. And that's an important distinction, and I think that the lower courts have struggled to understand that, which is why you have spheres a couple years later, which is where the district judge did exactly what trial counsel was asking the district judge to do here. There was an acknowledgment by trial counsel in this case that the literal calculation of the guidelines required a 12-level enhancement, and that's on ER 57 and 58, quote, while under a little reading of the guidelines, Mr. Valenzuela's prior conviction, and then I skip a little bit, merits an upward adjustment of 12 levels as the probation officer recommends. But trial counsel then went on to argue that the better measure of the harm here would be a four-level enhancement, and basically asking the court to do what the district judge did in spheres, which was first calculate the crack cocaine guidelines as they were set out by the sentencing commission with the 101 ratio. And then what the district judge did in spheres was says, I think a better measure, a better calculation is a 20-to-1 ratio. And so that's just a variance under 3553A. It is a variance. That's all that is. It is. It is. But I think it's an ‑‑ I mean, I think that what ‑‑ I mean, why we had to have spheres, why the United States ‑‑ or why the Supreme Court decided more as well is that the district judges and the appellate courts were not understanding that there's two kinds of variances. And I think that this court's decision in Henderson basically requires district judges in the Ninth Circuit to recognize their Kimbrough authority, which is slightly different. But you're asking us to find that the district judge did not understand that he had the authority to vary. And in doing so, you reference his language, which is on page 10 of the record. And as I indicated, it seems to me that there he was not talking about a variance, but he was talking about the proper calculation of the guidelines and that a downward departure as authorized by the guidelines would not be appropriate. And that's at least a construction of what he was saying. And it seems to me that we shouldn't presume that he did not understand his authority, particularly when there is some language that indicates that he was talking about a downward departure and not a variance. That was my point to you. And I guess I would say that the Henderson decision, United States v. Henderson, 649 F. 3rd. 955, from this year, from this court, basically holds the opposite. What that case says is that, excuse me, is that because it is unclear whether the district judge recognized and exercised his Kimbrough discretion, we reverse and remand for resentencing. And then later on it goes on to state, we are unable to ascertain whether the district court committed procedural error by failing to appreciate its Kimbrough discretion to vary from the child pornography guidelines, section 2G 2.2, on policy grounds, or whether it recognized but declined to exercise that discretion. And so let me ask you, was there really a policy argument advanced here at the time of sentencing? In the nature of a Kimbrough kind of policy argument? Yes. I mean, the what trial? If you read the arguments of the defense counsel, both in his memorandum and at the hearing, he just basically says these enhancements are excessive. They are excessive. And, I mean, he makes the argument that the plus 12 enhancement is stale, right? It doesn't count as criminal history. No, no, no. I'm talking about the enhancements themselves. Why is it, why, what is the policy shortcoming? You know, why is, you say he didn't make, the district court didn't acknowledge it had, it had the ability to disagree with the policy statement or the policy behind these enhancements. So where is the policy argument at the hearing or in the district courts, the sentencing memorandum? On page 57. Okay, what is it, what's the policy argument that he makes? Okay, and I'll just read from. No, no, tell him, just tell him, what is the policy argument? I think the policy argument is that the plus 4, it would be a better measure. Why? For the harm. Why? That resulted. Why? Because it's more recent, because it scores as criminal history, right? The plus 12 is stale. It shouldn't be the proper measure. No, well, suppose it was just, so that's more specific to this case because the prior was, the prior conviction was older, right? Yes. So that's fact specific to this case. But I'm asking what is the broad policy argument that you're claiming he didn't, that the district court judge did not acknowledge at the time of sentencing? The argument is that, the policy argument is that the best measure, the best enhancement is the most serious offense that scores as criminal history. It seems to be what trial counsel was arguing. And I would like to reserve the rest of my time for rebuttal. Okay. Good morning, Your Honor. Michelle Pettit for the United States. I think that the Court has already hit on the exact problem with the position of Mr. Valenzuela-Quintero in this case. What was presented to the district court at sentencing was the argument that the plus 12 should have been ignored. And instead, the Court should provide an enhancement of a plus 4. And what the district court said, directly there in the record on page 10 of the transcript of the ERs, is that he had to calculate the guidelines properly in accordance with the guidelines, in accordance with the book, first. Then he has the ability to do a variance. And he, clearly from the record as you read it, he, at the end of the sentencing, after all has been told to the court and he's analyzed everything, he has a very good detailed recitation of why he comes to the decision he comes to. But not one point throughout the entire record is the word policy ever mentioned. The whole distinction that the appellant now makes on appeal is he's trying to take what was said at the district court level and make it into a policy disagreement that's very specific, as you find in Spears. But that was not provided to the court at that level of the sentencing. Instead, it was really a staleness argument. Right. It was a Damascus Vasquez argument of it's an old conviction, so as the guidelines apply to this individual, it is unreasonable. Not as they apply to all defendants across the country. He never made a policy disagreement with 2L1.2, which is different than what you find in the line of cases with Spears and all the crack cocaine cases. What about the argument, at least in the briefs, that the district judge misconstrued Vasquez because he, well factually he misunderstood that this defendant had, or that Vasquez had some intervening criminal activity. I mean he seemed to view Vasquez as that defendant had nothing between the prior felony and his current case. I think it's clear from the record, your honor, that the district court understood the facts of Meskwa Vasquez to be that he didn't have any violent crimes, he didn't have any immigration crimes in addition, between the time of his original conviction and his deportation. And his coming back to the court for the 1326. And it is very clear from the record that at the trial level in this court, the judge was keying in on the immigration violations in this particular case, Mr. Valenzuela-Quintero, because he had two prior immigration offenses directly before this offense. And that was really what was driving the sentence under 3553A and the deterrence factor. That you do not have in a Meskwa Vasquez. And there is some clear equity arguments under Meskwa Vasquez because he has such an old conviction and when he came back, he was deported, two weeks later he comes back, that's his very first immigration felony. And he's immediately hit with a very large sentence. The district court in this case made the distinction that that doesn't apply in these particular facts, because this individual, Mr. Valenzuela-Quintero, already had two immigration offenses. One for six months, where he got his warning shot, if you will. He comes back again and then he gets the 56 months. So the court says now I'm faced with a defendant who has already had two prior immigration offenses for six months and 56 months, he comes before me again and he's asking for something less. And in this case, the court said that Meskwa Vasquez, the facts just didn't apply. And he's true on that, because the facts were not similar. So any confusion that might be voiced in the record, it's very clear from the actual holding, the finding of the lower court, district court, that his analysis was proper in accordance with Meskwa Vasquez. I'll make one observation, maybe it's not a question, but you read these sentencing transcripts and there's a lot of conflating of departure and variance. Yes, Your Honor, there is. And it would help a lot if counsel at the time of the sentencing would just sort of remind the district judge, you know, we're talking about clearly calculating the guideline, and then we're going to see about 3553A and see if there's any basis to vary from that guideline, just to make it clear about what's going on. I would agree. We've both been district judges. I'm a current district judge, and it's very hard. We have a lot of sentencings. We tend to sometimes not speak precisely, and counsel can assist in that regard. Your Honor, and I think that actually is part of the problem in this case. Yes. Because I think that's exactly what Mr. Valenzuela-Quintero is doing. He's taking the lack of accuracy, if you will, or precision in the wording, and turning that into an argument of saying that the court didn't understand he had the ability to vary, which clearly from the record the court is saying that he does. He understands that the guidelines are advisory. He says that right in the record. But unfortunately in this case, the district court judge used certain words to characterize Ms. Vasquez. And I think, Your Honor, it's important to note when you go back to the case law with Kimbrough and Spears, all the wording is vary. It talks about vary. They always calculate the guidelines precisely in the beginning, and then they go to the very language. And I think that would have been helpful in this record, but I think it's pretty clear that's what the court was doing as it was going through its calculations. And also you can look at the in-sentence. You know from the in-sentence, just under a reasonableness standard, when the guideline range was 51 to 63, both the United States, myself, as well as probation, is recommending 63 months because that's a nice incremental jump from 53. It's actually a pretty low jump even from the 53 months he previously received. And the court, well, as he argues through talks through his analysis, you think that he's going to go with the 63 months or higher based on the previous criminal history. He then says that he does take into consideration the five years that Mr. Valenzuela-Quintero stayed out of the country. But listen, what we have here is a man who has a son who is 10 or 11 years old, and there's a lot of danger down in Tijuana. His mother's house was bombed down. There's a lot of people getting murdered in the streets. And so he wants to see his son. And so he takes a chance and he crosses the border and he gets caught. And so we severely punish him because he wants to see his little boy. Now, to me, that is a far cry from justice. And I was a district judge, and I'm so happy to say that this was way, way after when the sentencing guidelines came in and after I got on the Court of Appeals. And all they've done is add a tremendous amount of work, taken away a lot of resources from the probation officers, which used to be social workers. Now they're working all these complicated guidelines like the computers and the discretion, the power to determine a sentence is shifting away from the district judges to the very young, many times inexperienced, many times not as mature as they should be U.S. attorneys. So that's the bottom line here. And so that's the system we now live under. Amen. Yes, Your Honor. And with that, I will conclude unless there's further questions for me from the Court. Thank you, Counsel. You have a minute and a half for rebuttal or a minute for rebuttal. Just a few points. The government conceded below that defense counsel agreed that the 12-level enhancement technically applied here, and that's in their sentencing memorandum. That's in the ER at 34. Number two, trial counsel below didn't cite Booker. It cited Spears. He was making a policy argument in this case. Number three, the district judge clearly did not understand the facts of Amezcua-Vazquez. What he says is, however, Mr. Valenzuela falls into the category of cases that's come down since Amezcua, saying that if you have done other things in the meantime, other criminal behavior, then Amezcua doesn't really apply. And that's just not true. And then finally, to the extent, as the Court has acknowledged, that the record is unclear, what Henderson holds is that that requires remand, that the district judges have an affirmative duty to make clear that they understand their Kimbrough authority, which is different than Booker authority. And what that does, what Amezcua-Vazquez does, is that when district judges make policy disagreements, is it gives feedback to the Sentencing Commission, and it encourages the Sentencing Commission to do their job. And I just echo Mr. or Judge Pragerson's thoughts. You know, my client, son of a United States citizen, father of a United States citizen, his mother had been, lived in the United States one year prior to his birth. He would have been a United States citizen, and he's done nearly a decade in jail for illegal entry. Thank you. Okay. Thank you. Thank you. We appreciate your arguments. The matter is submitted. Our next case for argument is United States of America v. Melvin McGee.
judges: Jones, Pregerson, Paez